# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kristin Ann Tix,                                No. 24-cv-1824 (KMM/ECW)
n/k/a Kristin Ann McGowan,

        Plaintiff,

v.                                                                    **ORDER**

Robert William Tix,

        Defendant.

This case arises out of a tribal court's conclusion that it had jurisdiction over a marriage dissolution proceeding between a member of the tribe and his nonmember spouse and the court's final resolution of the parties' divorce. Plaintiff, Kristin Ann Tix, is the nonmember, and in her complaint, she seeks a declaratory judgment that the tribal court's decisions are null and void because it lacked jurisdiction over her. She also seeks an injunction barring Defendant from enforcing the tribal court's final orders in the Minnesota state courts. Defendant, Robert William Tix, filed a motion to dismiss, Doc. 14, and Plaintiff simultaneously filed a motion for summary judgment, Doc. 20. The parties agreed that the relevant facts are not in dispute and the issues in this case are purely legal. Doc. 11. For the reasons that follow, the Court denies Plaintiff's motion for summary judgment and grants summary judgment to Defendant pursuant to Fed. R. Civ. P. 56(f)(1).

## BACKGROUND

Defendant Robert Tix and Plaintiff Kristin Tix [1] were married in September 2008 in Minneapolis. Compl. ¶ 10. They have three minor children together who are 6, 12, and 14 years old. *Id.* Robert is an enrolled member of the Prairie Island Mdewakanton Dakota Indian Community (hereafter "PIIC" or "the Tribe"). *Id.* ¶ 11. Kristin is not a member of the Tribe and is not eligible for enrollment with the PIIC or any other Native American tribe. All three of the parties' children are enrolled members of the PIIC. *Id.* ¶ 11.

During the parties' marriage, the family did not reside on PIIC reservation lands. Instead, they lived together in Edina, Minnesota, a city within Hennepin County. Compl. ¶ 12. Neither Kristin nor Robert were employed during their marriage. *Id.* ¶ 13. To support themselves, the couple relied on Robert's per capita payments from the Tribe. Robert's per capita distribution in 2021 was just over $198,000, and in 2022, he received a little more than $172,000. *Id.* ¶ 24.[2]

Eventually, the couple decided to divorce, and the parties engaged in simultaneous proceedings in different judicial theaters. In February 2022, they separately filed petitions for dissolution of the marriage. On February 9, 2022, Kristin filed a summons and petition

---

[1] In Plaintiff's memorandum supporting her motion for summary judgment and in her complaint, she states: "Plaintiff goes by the last name of Tix (not McGowan, her maiden name), only because she contests the legality of the tribal court order purporting to change her name, not out of affection for the name itself." Doc. 21 at 3 n.1; Compl. ¶ 6 n.1, Doc. 1. To avoid any confusion in the use of last names, the Court refers to both parties by their first names or as "Plaintiff" and "Defendant" throughout this Order.

[2] These numbers differ somewhat from those reflected elsewhere in the record, *see* Ex. G  170, but those differences are immaterial to this dispute.

in Hennepin County District Court. Compl. ¶ 14; Debele Decl., Ex. A at 1 ¶ 4.[3] The same day, Robert filed his petition in in the Court of the Prairie Island Mdewakanton Dakota Community (hereafter "the Tribal Court"). Ex. A at 1 ¶ 3.[4]

On February 17, 2022, Kristin also filed a petition in Hennepin County District Court for an Order for Protection ("OFP") against Robert on behalf of herself and the couple's three minor children. Compl. ¶ 16. The state court issued an *ex parte* OFP and set an evidentiary hearing for May 24, 2022. Ex. A at 2 ¶ 15. On March 23, 2022, the Prairie Island Family Services agency filed a petition for children in need of protective services in the Tribal Court concerning the couple's three children. The Tribal Court set a hearing on the petition for April 20, 2022. *Id.* at 3 ¶ 24.

Meanwhile, on March 9, 2022, the Hennepin County District Court handling Kristin's dissolution proceeding held an initial case management conference, and Robert filed a motion asking the state court to dismiss or stay Kristin's dissolution proceeding and to dismiss the parties' children from the OFP. Compl. ¶ 17. At a settlement conference with

---

[3] Defendant filed several exhibits in support of his motion for dismissal, which are attached as Exhibits A through J to the Declaration of Gary Debele. Doc. 17. The Court cites to these exhibits as "Ex. __" throughout this Order.

[4] Due to issues with achieving personal service of the summons and petition upon Robert, the Hennepin County District Court eventually found that Kristin's dissolution case "commenced" on March 11, 2022. Ex. A at 6. Eventually, the Tribal Court determined that, pursuant to Tribal law, Robert's dissolution proceeding commenced at the time it was filed and that Kristin was personally served on February 18, 2022. *Id.* at 4 ¶ 28; Ex. B at 1 n.1.

Prairie Island Family Services, the parties agreed to a temporary supervised visitation schedule for Robert. Ex. A at 3 ¶ 25; Compl. ¶ 18.[5]

Kristin moved to dismiss Robert's dissolution proceeding in the Tribal Court on grounds that the Tribal Court lacked subject-matter and personal jurisdiction. Ex. B at 2–3. On April 5, 2022, the Tribal Court denied Kristin's motion. Ex. B. The Tribal Court found that it had jurisdiction over all the issues in the dissolution proceeding and over the ongoing child-protection proceedings. The Tribal Court declined to enforce the *ex parte* OFP that had been issued by the Hennepin County District Court. Compl. ¶ 19; Ex. A at 3 ¶ 27.

On April 6, 2022, in Kristin's Hennepin County dissolution proceeding, the Hennepin County court issued an order deferring jurisdiction to the Tribal Court and staying Kristin's dissolution case until the Tribal Court resolved Robert's dissolution and custody petition. Compl. ¶ 20; Ex. A at 13 ¶ 1. However, the Hennepin County District Court went forward with the May 24, 2022 evidentiary hearing on Kristin's petition for an OFP. The court found that Kristin did not meet her burden for an OFP to issue against Robert with regard to the couple's children, but she had shown she was entitled to an OFP personally. Compl. ¶ 22.

Kristin twice attempted to appeal the Hennepin County District Court's decision transferring jurisdiction to the Tribal Court to the Minnesota Court of Appeals. First, she

_____

[5] Prairie Island Family Services eventually moved to close the protective services matter in early May 2023 because the parties addressed the protection concerns in private proceedings. Ex. G ¶ 36.

appealed the May 11, 2022 order staying her dissolution proceeding and deferring jurisdiction to the Tribal Court. The Minnesota Court of Appeals dismissed the first appeal because the May 11 order was not a final order appealable under Minnesota appellate procedural rules. Ex. C. The appellate court remanded the matter to Hennepin County District Court, instructing the district court to consider whether it was appropriate to continue the stay. *Id.* On September 13, 2022, the district court concluded that the matter should remain stayed. Ex. E; Ex. D at 1–2. Kristin filed her second appeal of that September 13 order, and the Minnesota Court of Appeals again dismissed the appeal because there was no final appealable order in the district court proceeding. Ex. D at 3–4. On September 30, 2022, Kristin filed a notice of voluntary dismissal of her Hennepin County dissolution proceeding pursuant to Minn. R. Civ. P. 41.01(a). Ex. F.

The Tribal Court held an evidentiary hearing in Robert's dissolution case over four days in early May 2023. Compl. ¶ 23; Ex. G at 1. On July 21, 2023, the Tribal Court issued its Findings of Fact, Conclusions of Law, Order for Judgment, and Judgment and Decree. Ex. G; Compl. ¶ 23. In relevant part, the Tribal Court found that Kristin was not entitled to any spousal maintenance—it found that Robert's income was derived from the per capita payments he received from the Tribe, and a provision in the PIIC Judicial Code prohibits a Tribal Court from considering per capita payments when establishing any order for maintenance. Ex. G ¶ 182–83 (citing PIIC Judicial Code, Ch. VI, § 6(d)); *see also id.* Order ¶ 30; Compl. ¶ 24. The Tribal Court required Robert to pay monthly child support to Kristin. Ex. G ¶ 23. The Tribal Court also divided parenting time between Robert and

Kristin, but Kristin alleges that the Tribal Court's division reduced her time from 50 percent to 35 percent. Compl. ¶ 23.

Kristin appealed the Tribal Court's final order from July 21, 2023 and its April 4, 2022 order denying her motion to dismiss for lack of jurisdiction to the PIIC Court of Appeals. Compl. ¶¶ 26–27. On January 26, 2024, the PIIC Tribal Court of Appeals issued a decision affirming both orders. Compl. ¶ 27. The Tribal Court of Appeals rejected Kristin's arguments that the lower Tribal Court lacked personal jurisdiction over her and subject matter jurisdiction over the dispute because she is not a member of the Tribe and never lived on PIIC land. Ex. H at 2, 3 (discussing Kristin's position on appeal). In part, the Tribal Court of Appeals based its conclusion on Kristin's voluntary decision to enter into a marriage with a Tribal member and her "numerous contacts with the [PIIC]." *Id.* at 5–7. The court further held that as a sovereign entity, the Tribe had the power to exercise jurisdiction over its members' domestic relations, and federal law did not preclude it from deciding the case because one of the parties was a nonmember. *Id.* at 8–13. In part, applying *Montana v. United States*, 450 U.S. 544, 565–66 (1981), the PIIC Court of Appeals affirmed the conclusion that the Tribal Court could exercise jurisdiction over Kristin even though she is not a member of the Tribe because she entered a "consensual relationship" with a PIIC member when she married Robert. Ex. H at 9–10.

Dissatisfied with the outcome of the proceedings in the PIIC courts, Kristin filed this action, alleging that "[t]he Tribal Court exceeded the lawful limits of its jurisdiction." Compl., Count I. She asks this Court to issue an "Order finding that the Tribal Court Orders concerning her are null and void as lacking both subject matter and personal jurisdiction,

and barring the Defendant from seeking to enforce them in tribal or state courts." *Id.*, Prayer for Relief ¶ 1.[6]

## DISCUSSION

Kristin moves for summary judgment pursuant to Fed. R. Civ. P. 56. She argues that federal law does not allow the PIIC Tribal Court to exercise jurisdiction over nonmembers except in limited circumstances, none of which are present here. Pl.'s SJ Mem. 10. Second, Plaintiff contends that she "did not have sufficient minimum contacts with the tribe under due process to support tribal jurisdiction." *Id.* at 19–23.

Robert asks this Court to dismiss this case, pursuant to Fed. R. Civ. P. 12(b), for four reasons. First, he asserts that Plaintiff's claims are essentially an improper effort to appeal the Hennepin County District Court's decision to defer or transfer jurisdiction to the tribe, and that attempt is barred by the *Rooker-Feldman* doctrine. Pl.'s MTD Mem. 8–12 (citing Fed. R. Civ. P. 12(b)(1)), Doc. 16. Second, he argues that the Court should dismiss Plaintiff's claims pursuant to Rule 12(b)(6) because Kristin has failed to exhaust her state court remedies. *Id.* at 12–14. Third, he argues that the Court should dismiss the complaint for improper venue, pursuant to Rule 12(b)(3), pursuant to the "abstention doctrine." *Id.* at 14–19. And finally, he argues that the complaint should be dismissed pursuant to Rule 12(b)(7) for failure to join an indispensable party—namely PIIC—under Rule 19. *Id.* at 19–26.

---

[6] Kristin also asks this Court to "[r]emand[] the parties' dissolution claims to state court." Compl., Prayer for Relief ¶ 2. However, the Court notes that Kristin voluntarily dismissed her state court proceeding, so even if the Court were to agree with her that the Tribal Court exceeded its jurisdiction, there is no state court proceeding to which any dissolution claims could be remanded.

Having carefully reviewed the record, the Court finds that Plaintiff has failed to show that she is entitled to summary judgment. Moreover, the undisputed material facts show that the Tribal Courts properly exercised jurisdiction over the dissolution proceedings. Consequently, the Court concludes that Defendant is entitled to summary judgment and dismisses this action. Therefore, the Court also denies Defendant's motion to dismiss as moot.

## I.    Legal Standard

"Summary judgment is appropriate if there is no genuine dispute of material fact and a party is entitled to judgment as a matter of law." *Collins v. Union Pac. R.R. Co.*, 108 F.4th 1049, 1052 (8th Cir. 2024); Fed. R. Civ. P. 56(a). District courts "should not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue." *Avenoso v. Reliance Std. Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021). Facts are material when their resolution would "affect the outcome of the suit under the governing substantive law." *Ploen v. AIG Specialty Ins. Co.*, 691 F. Supp. 3d 1013, 1016–17 (D. Minn. 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact dispute is "'genuine' only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). In evaluating whether summary judgment is appropriate, courts draw reasonable inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021).

As indicated above, the parties in this case have agreed that there are no material factual disputes and the issues to be decided in this case are "purely legal." Doc. 11. Where the moving party has had "notice and a reasonable opportunity to respond, the court may . . . grant summary judgment for a nonmovant." Fed. R. Civ. P. 56(f). "The requirements of Rule 56(f) are met when the losing party moves for summary judgment on the relevant issue because that party obviously expects the district court to make a final ruling and agrees to resolution of the issue in summary fashion." *Taylor Corp. v. XL Ins. Am., Inc.*, No. 22-cv-1151 (JRT/TNL), 2024 WL 453826, at *3 (D. Minn. Feb. 6, 2024) (cleaned up). "By raising arguments in support of its own motion for summary judgment, the losing party has had an opportunity to develop the record on that issue." *Id.* (citing *Johnson v. Bismarck Pub. Sch. Dist.*, 949 F.2d 1000, 1005 (8th Cir. 1991); *Barkley, Inc. v. Gabriel Bros., Inc.*, 829 F.3d 1030, 1041 (8th Cir. 2016)).

## II.   Analysis

### A. This Court's Jurisdiction

Plaintiff argues that the Tribal Courts lacked jurisdiction over her because she is not a member of the tribe and never resided on the reservation, including during the parties' marriage. First, the Court agrees with Kristin's assertion that this case raises a federal question that falls within the Court's own subject matter jurisdiction. As the Supreme Court has explained, "whether a tribal court has adjudicative authority over nonmembers is a federal question," and if a tribal court "is found to lack such jurisdiction, any judgment as to the nonmember is necessarily null and void." *Plains Comm. Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 324 (2008); *Attorney's Process and Investigation Servs., Inc.*

*v. Sac & Fox Tribe of Miss. In Iowa*, 609 F.3d 927, 936 (8th Cir. 2010); *Harder v. Roberts*, No. 12-cv-663 (MJD/JJK), 2013 WL 5357173, at *1 (D. Minn. Sept. 24, 2013).[7]

Opposing the summary judgment motion, Defendant does not meaningfully dispute that the Court has the authority to adjudicate whether the PIIC courts had jurisdiction over a nonmember. He raises several arguments that track those he made in support of his motion to dismiss. Only two merit further comment.

Defendant suggests that the Court lacks jurisdiction over this dispute under the *Rooker-Feldman* doctrine because Plaintiff is really seeking to use this proceeding as an appeal of the Hennepin County District Court's decision to defer jurisdiction to the Tribe. "The *Rooker-Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Kvalvog v. Park Christian Sch., Inc.*, 66 F.4th 1147, 1152 (8th Cir. 2023). On its face, Kristin's complaint challenges only the scope of the tribal court's jurisdiction under federal law. It is not apparent from the record that the Hennepin County District Court even made a conclusion on that issue. The underlying order deferring jurisdiction to the tribal authorities was concerned with application of Uniform Child Custody Jurisdiction and Enforcement Act. The parties point to no case illuminating how the *Rooker-Feldman*

---

[7] The *Harder* court ultimately issued a declaratory judgment granting the nonmember plaintiff's claim that the PIIC Tribal Court had issued a judgment and decree in a tribal dissolution proceeding without subject matter jurisdiction and without personal jurisdiction over the plaintiff. 2013 WL 5357173, at *7 (Order ¶ 4). However, the court reached that conclusion not because it determined that such jurisdiction could never be exercised, but as a sanction for the defendant's willful and repeated violations of court orders requiring her to personally appear. *Id.* at *3–6. Therefore, *Harder* does not inform the analysis the Court must conduct in this case.

doctrine applies to a situation comparable to this, and the Court finds it unnecessary to resolve this thorny issue here in light of its ruling on other issues.

Next, Robert argues that the Court should abstain from exercising its jurisdiction because Kristin can now seeks review of the Hennepin County Court's last decision in the Minnesota Court of Appeals. Def.'s SJ Opp'n 4–9, Doc. 25. This argument rests on the somewhat dubious proposition that now that the tribal proceedings are concluded, Kristin could, in fact, appeal some final decision of the Hennepin County District Court to the Minnesota Court of Appeals. Because Plaintiff voluntarily dismissed her state court dissolution proceeding nearly two years ago, taking an appeal now seems unlikely.

In sum, the Court finds that it has subject-matter jurisdiction over Plaintiff's claim that the Tribal Courts acted without jurisdiction and declines to abstain from deciding the issue.

## B.  The *Montana* Exceptions

The central question raised by this case is whether the Tribal Court had authority to adjudicate a marriage dissolution proceeding where one of the parties to the marriage is a nonmember who does not reside on tribal land. Based on the undisputed facts here, the Court concludes that it does.

In *Montana v. United States*, 450 U.S. 544 (1981), the Supreme Court explored the limits of tribal authority to regulate the conduct of nonmembers. *See also Attorney's Process*, 609 F.3d at 935 ("The federal principles which govern tribal civil jurisdiction over nonmembers were set out in *Montana v. United States*, and that decision remains the pathmarking case on the subject.") (cleaned up). As the Eighth Circuit has explained, "[i]n

*Montana*, the Supreme Court concluded that the Crow Tribe lacked the power to prohibit hunting and fishing by nonmembers on non-Indian fee land within its reservation because 'exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes.'" *Id.* at 935 (quoting *Montana*, 450 U.S. at 564). Therefore, although tribes retain considerable inherent sovereign powers, those powers generally "do not extend to the activities of nonmembers of the tribe." *Id.* (quotation omitted).[8]

But the general rule that tribes may not regulate nonmembers on non-Indian fee land has important exceptions. Indeed, "'Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.'" *Id.* at 935–36 (quoting *Montana*, 450 U.S. at 565). The Supreme Court recognized two exceptions in *Montana* that allow tribes to regulate "nonmember conduct." *Id.* at 936. They are commonly referred to as the *Montana* exceptions. They "are rooted in the tribes' inherent power to protect certain sovereign interests," including tribes' rights "to make their own laws and be governed by them." *Id.* (quotations omitted).

---

[8] Here, neither party contends that any "federal statute or treaty specifically provides the Tribal Court with jurisdiction over the claims at issue in this case; therefore the Tribal Court's jurisdiction must arise from its 'retained or inherent sovereignty.'" *Belcourt Pub. Sch. Dist.*, 786 F.3d at 657 (quoting *Atkinson Trading Co., Inc. v. Shirley*, 532 U.S. 645, 649–50 (2001)).

The first *Montana* exception is at issue here.[9] It provides that "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." 450 U.S. at 565. The scope of a tribal court's jurisdiction under this exception is the same whether the tribe attempts to regulate nonmember conduct through legislation or through a ruling of a tribal court. *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 657 n.3 (8th Cir. 2015) (citing *Strate v. A-1 Contractors*, 520 U.S. 438, 453 (1997)). Based on the first *Montana* exception, tribes have "power over a nonmember [when] 'the nonmember enters tribal lands or conducts business with the tribe.'" *Turpen v. Muckleshoot Tribal Court*, No. C22-0496-JCC, 2023 WL 4492250, at *3 (W.D. Wash. July 12, 2023) (quoting *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 142 (1982)). "And tribal jurisdiction 'depends on what non-Indians 'reasonably' should 'anticipate' from their dealings with a tribe or tribal members on a reservation.'" *Id.* (quoting *Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 817 (9th Cir. 2011)).

It is undisputed on this record that Kristin entered a "consensual relationship" with a member of the PIIC Tribe through a "contract" or "other arrangement"—namely her marriage to Robert. And the record amply demonstrates that she could reasonably

---

[9] The second *Montana* exception provides that a tribe "retain[s] inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health and welfare of the tribe." 450 U.S. at 566. Neither party argues that this exception is applicable here.

anticipate the exercise of tribal jurisdiction over the dissolution of that relationship according to the PIIC's laws.

Although Plaintiff argues that her "off-reservation acts of marrying and having children with a non-resident member do not" fall under the first *Montana* exception (Pl.'s Summ. J. Mem. 14–15, 18, Doc. 21), the Court disagrees. Plaintiff voluntarily entered a marriage with Defendant, a member of the PIIC. Although the couple did not live on the tribal land, throughout their marriage, the couple's financial needs were primarily met through the per capita payments Defendant received from the Tribe. In addition, the couple's children received health and dental insurance coverage through the Tribe. Ex. G. ¶ 24 ("Father shall continue to maintain health and dental insurance coverage for the minor children through the Prairie Island Mdewakanton Dakota Community for the benefit of the minor children."). Kristin and Robert themselves also received medical and dental insurance coverage from the Tribe. Ex. A ¶ 11 ("Petitioner [and] Respondent . . . have been provided free medical and dental insurance coverage from the Prairie Island Mdewakanton Dakota Community."). And during the marriage, Kristin "attended pow wows with the minor children." *Id.* ¶ 12. Based on this record, the Court finds that Plaintiff entered a consensual relationship with Defendant, a member of the Tribe, and Plaintiff could reasonably anticipate from her dealings with Defendant and the tribe that the Tribal Court could exercise jurisdiction over their marriage dissolution.

The Court's conclusion finds support in the caselaw. The parties point to no binding authority addressing the specific issue presented here—whether the first *Montana* exception allows a tribal court to exercise jurisdiction over a nonmember in a marriage

dissolution proceeding when the nonmember does not live on reservation land. And there are few federal appellate decisions that deal with closely analogous situations. But the decisions that each side references are consistent with the Court's conclusion that the Tribal Court's exercise of jurisdiction was proper.

First, Plaintiff points to the Ninth Circuit's conclusion that a tribal court had jurisdiction over a "marriage dissolution action between an Indian plaintiff and a non-Indian defendant residing on the reservation." *Sanders v. Robinson*, 864 F.2d 630, 634 (9th Cir. 1988). In reaching that conclusion, the *Sanders* court observed that in *Montana*, the Supreme Court referred to retention of civil jurisdiction over nonmembers on reservation land. *Id.* at 633 ("To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over *non-Indians on their* reservations, even on non-Indian fee lands." (quoting *Montana*, 450 U.S. at 565)) (emphasis added in *Sanders*); *see also id.* (discussing Indian law treatises that assumed "tribal courts would have at least concurrent jurisdiction in divorce cases involving an Indian plaintiff non-Indian defendant, where the non-Indian defendant resided on the reservation during the marriage") (citing W. Canby, *American Indian Law* 146 (1981); F. Cohen, *Handbook of Federal Indian Law* 342 (1982 ed.)).

Plaintiff reads *Sanders* to mean that a tribal court cannot exercise jurisdiction over a proceeding to dissolve a marriage between a nonmember and a member who reside off the reservation. But the Court is not persuaded for at least two reasons. First, *Sanders* simply does not say that. Second, it is noteworthy that the focus in both *Sanders* and *Montana* was on the limits of tribal court authority over nonmembers on reservation land.

15

The dispute in *Montana* involved the scope of tribal authority to regulate the conduct of nonmembers on land within the reservation. And similarly, the question of the tribal court's authority at issue in *Sanders* involved a dispute with a nonmember who resided within the reservation. Residing within a reservation is only one way the first *Montana* exception might be invoked. As a result, *Sanders* does not explore the extent of tribal court jurisdiction over a nonmember who does not reside on tribal land, but has entered into a consensual relationship with a member of a tribe.

Plaintiff next cites *Hornell Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087 (8th Cir. 1998) for the proposition that "[n]either *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring outside their reservations." *Id.* at 1091. Plaintiff suggests that this is consistent with her position that *Montana*'s first exception regarding consensual relationships cannot apply to a situation where the family resided off the reservation. But Plaintiff's reliance on *Hornell Brewing* is likewise misplaced. *Hornell Brewing* did not involve application of the first *Montana* exception at all. *Id.* at 1093 (indicating that the parties did not invoke the first *Montana* exception and stating that "the primary issue the parties raise on appeal relates to *Montana*'s second exception").

The Court's conclusion that a tribal court can exercise jurisdiction over dissolution proceedings between a member and a nonmember even when the nonmember resides off the reservation finds support in a district court case from the Western District of Washington. *Turpen*, 2023 WL 4492250, at *3. In *Turpen*, the court found that a tribal court had jurisdiction over the couple's dissolution proceeding because the plaintiff entered

a consensual relationship with a tribal member vis-à-vis their marriage. *Id.* Although the couple lived on the Muckleshoot Reservation before they were married, they later moved to a home that was not on reservation land. *Id.* And the *Turpen* court explained that the nonmember plaintiff had received financial support from the tribe as a result of that marriage, "including an income-based grant for the down payment and loan assistance for the mortgage, which provided that the Tribe would subsidize their housing, so long as [the tribal member] lived there." *Id.* In light of this consensual relationship, the *Turpen* court rejected the plaintiff's argument that the first "*Montana* [exception] is inapplicable because the parties did not reside on the reservation." *Id.* As described above, the facts before this Court regarding the Tix family's relationship with the Tribe support PIIC's exercise of jurisdiction at least as much as those before the *Turpen* court.

In sum, this Court concludes that Defendant is entitled to judgment as a matter of law on Plaintiff's claims that the Tribal Court's orders were null and void because the Tribal Court lacked jurisdiction over the tribal dissolution proceeding.

### C. Personal Jurisdiction

Finally, Plaintiff argues that she "did not have sufficient minimum contacts with the tribe under due process to support tribal jurisdiction." Pl.'s Summ. J. Mem. 19. In their briefing, neither party points to controlling precedent that clearly illustrates how a federal court should determine whether a tribal court presiding over dissolution proceedings had *personal* jurisdiction over a nonmember. And the Eighth Circuit has noted that the *Montana* exceptions concern a tribal court's subject-matter jurisdiction, rather than

personal jurisdiction, suggesting a separate analysis might be required. *Attorney's Process*, 609 F.3d 927, 937 (8th Cir. 2010) (citing *Nevada v. Hicks*, 533 U.S. 353, 367 n.8 (2001)).

      The exact contours of the personal-jurisdiction issue Plaintiff raises are not entirely clear. Plaintiff begins with the insistence that, during the tribal court proceedings, she "never relied on the 14th Amendment's Due Process Clause to limit tribal court jurisdiction over her." She asserts that the appropriate reference point for her argument is the Indian Civil Rights Act. Pl.'s Summ. J. Mem. 20–21 (citing 25 U.S.C. § 1302). This observation appears to be a response to the PIIC Court of Appeals' discussion of how it determines the issue of personal jurisdiction: first, it examines whether tribal law allows the Tribal Court to exercise authority over a nonresident, nonmember who never resided on the reservation, if so, it considers whether "the U.S. Constitution's Due Process Clause permits such reach of authority." Ex. H at 3. Even if Plaintiff is correct that she never argued before the PIIC courts that the U.S. Constitution was applicable to the Tribe, she offers no argument as to why that matters. What's more, Plaintiff ignores the fact that the PIIC Court of Appeals identified the very same ICRA provision that she now references. Ex. H at 4 (citing 25 U.S.C. § 1302(a)(8)).[10] Whatever this criticism of the Tribal Courts' assessment of the scope of their authority over Plaintiff is intended to convey, it presents no basis for concluding that the Tribal Courts' judgments are void for lack of personal jurisdiction.

---

[10] The Indian Civil Rights Act provides: "No Indian tribe in exercising powers of self-government shall . . . deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." 25 U.S.C. § 1302(a)(8).

In any event, Plaintiff appears to agree that her personal-jurisdiction argument should be determined by reference to traditional considerations of due process, whether those considerations stem from the U.S. Constitution or the Indian Civil Rights Act. Pl.'s Summ. J. Mem. 20–21 (citing ICRA and asserting that "due process applies"). At least one court has found, generally, that "[t]o exercise civil authority over a defendant, a tribal court must have both personal jurisdiction and subject matter jurisdiction." *Water Wheel Camp*, 642 F.3d at 819 (citing 18 William Reade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 8644.50 (rev.perm.ed. 2006)). The Ninth Circuit has also indicated that the "'consensual relationship' analysis under *Montana* resembles the Court's Due Process Clause analysis for purposes of personal jurisdiction," *Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1138 (9th Cir. 2006), and there is not a "more rigorous test of personal jurisdiction applicable to tribal courts," *Allstate Indem. Co. v. Stump*, 191 F.3d 1071, 1075–76 (9th Cir. 1999).

The Court finds no flaw in the Tribal Courts' determinations that they had the authority to adjudicate the dissolution proceeding Defendant filed, even though Plaintiff was a nonmember who did not live on PIIC land. In rejecting Plaintiff's argument, the PIIC Court of Appeals first found that the relevant provisions of the PIIC's Community Courts Ordinance allowed the Tribal Court to exercise personal jurisdiction over Plaintiff even though she lived outside the exterior boundaries of the reservation. Second, the Court of Appeals found no support for Plaintiff's suggestion that there had been anything unfairly prejudicial about the way the Tribal Court's proceedings were conducted, concluding that she was provided proper notice and had the opportunity to be heard during a four-day trial,

after which the court issued a 65-page order with detailed findings and conclusions. Ex. H at 5.

Third, the Court of Appeals examined the number and nature of Plaintiff's contacts with the PIIC and found them sufficient to support the exercise of personal jurisdiction.

> Here, [Kristin] had numerous contacts with the [PIIC], listed in the Community Court's opinions.[] She married a Community member. Her children with [Robert] are Community members. The family derived their principal income and their assets from per capita payments that [Robert] received from the Community. Both parties and their children received health insurance from the Community. [Kristin] supported the children's connections with the Community by attending cultural events in the Community with the children.
> . . . .
> Not only are [Kristin's] contacts with [the Tribe] numerous, but they are also specifically tied to the Community's interests in regulating the subjects of the dissolution action. It is self-evident that the Community has an interest in the domestic relations of its members. The Community also has vital interests in the health, safety, education, and cultural growth of the parties' children. Since the parties' income and assets primarily come from the Community's per capita payments, the Community has an interest in the disposition of these monies.
> . . . .

*Id.* at 5–6 (footnote omitted).[11]

In addition, the PIIC Court of Appeals noted that having Plaintiff participate in the Tribal Court proceeding was not significantly burdensome to Plaintiff because she lived within Minnesota and her residence was less than 50 miles from the court. *Id.* at 6. It also

---

[11] The PIIC Court of Appeals observed that Plaintiff did not challenge any of the Tribal Court's findings of fact from the order denying the motion to dismiss or in the final order for judgment. Ex. H. at 5 n.5.

observed that the Hennepin County District Court had acknowledged the Tribal Court's "concurrent jurisdiction over all aspects of the dissolution." *Id.* And the Court of Appeals found additional support for the exercise of personal jurisdiction as follows:

> The record establishes the Community's interests in the subjects of the dissolution in other ways. Prairie Island Family Services filed a petition in the Community Court for children in need of protection and assisted the parties in negotiating a parenting time schedule. The children's paternal grandfather also filed a petition in the Community Court to secure grandparenting time with the children.

Ex. H at 6.

Finally, although the PIIC Court of Appeals did not repeat this analysis, the Tribal Court made the following observations when it issued its Order denying Plaintiff's motion to dismiss the tribal proceedings:

> The Mother contends that the exercise of jurisdiction over a dissolution proceeding involving a non-domiciled and non-member of the Community violates the due process provisions of the Indian Civil Rights Act because a tribal court cannot exercise subject matter jurisdiction over a dissolution proceeding involving a non-domiciliary unless he has sufficient contacts with the Community to warrant satisfy the "minimum contacts" standard of <u>International Shoe</u>. This Court rejects the argument because it is contrary to United States Supreme Court precedents. The general rule is that a Court has in rem jurisdiction to dissolve the bonds of matrimony provided it has appropriate jurisdiction over one of the parties to that marriage. As the United States Supreme Court held in <u>Williams v. North Carolina</u>, 317 U.S. 287 (1942) a court need not have personal jurisdiction over a Defendant in a dissolution proceeding in order to terminate the marital relationship. See also <u>Mahoney v. Mahoney</u>, 433 NW2d 315 (Minn. App. 1988)[.] A Court does, however, have to have personal jurisdiction over a Defendant in order to direct him to pay alimony or attorney's fees, or to determine his rights to

> marital property not situated within the forum court's
> jurisdiction not acquired with per capita benefits.

Ex. B at 6.

Based on a thorough review of the decisions of the trial and appellate proceedings in the Tribal Courts and the information available in this record, the Court cannot conclude that the Tribal Courts' conclusions regarding personal jurisdiction were erroneous or deprived Plaintiff of due process of law. Indeed, the Court agrees that Plaintiff's contacts were sufficient to support the Tribal Court's exercise of jurisdiction. Plaintiffs' only argument here is that the PIIC Court of Appeals erred because it insufficiently explained how the tribal dissolution proceeding arose out of or related to Plaintiff's contacts with the forum because she did nothing more than passively receive per capita payments from the Tribe. Pl.'s Summ. J. Mem. 23. The foregoing summary of the Tribal Courts' decisions illustrates the flaw in Plaintiff's framing, and the Court rejects Plaintiff's argument as lacking support.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT**

1.    Plaintiff's Motion for Summary Judgment (Doc. 20) is **DENIED**;

2.    Defendant is entitled to judgment as a matter of law on Plaintiff's claim that the "Tribal Court exceeded the lawful limits of its jurisdiction," Compl. (Count I), and Plaintiff is not entitled to the injunctive, declaratory, or equitable relief requested in her pleading.

3.    Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**.

    4.      Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 14) is **DENIED AS MOOT**.

    **Let Judgment be entered accordingly.**


Date: November 26, 2024               *s/Katherine Menendez*
                                       Katherine Menendez
                                       United States District Judge